|, DREW, J.
Seller of home appeals judgment awarding seller only buyer’s $500 deposit after buyer breached contract to purchase home. We amend the judgment to provide for an award of attorney fees, and as amended, the judgment is affirmed.

FACTS

Debra Dorsett and her brother Madison Formby were co-owners of a home in Bossier City. Dorsett owned a ⅞ interest in the *899 home; Formby owned the remaining ½ interest. In 1996, the home was placed on the market for sale. An appraisal performed in May, 1996 showed the home had an appraised 'value of $94,000, subject to certain repairs. This FHA appraisal required a termite treatment certificate, replacement of rotten decking on the rear porch, a new roof over the rear porch, replacement of broken glass on the rear porch, removal of a deteriorated shed from the yard, filling of holes dug by dogs in the yard and the replacement of a broken shower door with safety glass.
On April 22, 1996, Gary and Nancy Johnson signed an agreement to purchase the home in as/is condition for $93,700. Closing was to occur before May 29, 1996, but was extended to June 7, 1996. The Johnsons performed a walk-through inspection on June 1. Five days later, the Johnsons received a letter from their insurer informing them that he would not insure the home because of a problem with the roof that he observed. The Johnson then refused to execute the closing documents. Mr. Johnson declined to use another insurer because he wanted to use his old insurer. He also never offered to allow the sellers additional time to repair the roof.
| zIn June of 1996, Dorsett and Formby filed suit against the Johnsons, seeking damages, attorney fees, court costs and the release of the Johnsons’ $500 deposit that was being held by the Louisiana Real Estate Commission. Formby died while this suit was pending. Dorsett refinanced her mortgage on the house in November of 1996. The house was eventually sold to another party for $85,000 in May of 1998. The property had been appraised at $85,000 at that time.
Trial was held in this matter on July 16, 1999. The trial court ruled in favor of Dorsett on the issue of liability, finding that the Johnsons had breached the Buy/ Sell agreement. Because Madison Form-by had died prior to the time of trial, the court reduced damages by ⅜, Formby’s ownership interest. The court ordered the Johnsons’ $500 deposit to be released to Dorsett. The trial court found that Madison Formby had agreed to pay Dorsett a total of $8,400 as rent for living in the house after the breach.
The trial judge ruled that Dorsett was entitled to the difference between the contract price and the market value on the date of the breach. While there was no evidence of the property’s market value on the exact date of the breach, the property had been appraised at $94,000 less than a month before the breach. The court concluded that Dorsett suffered no damages in this regard as the property was appraised for a value higher than the contract price. Because Dorsett refinanced her mortgage after the sale fell through, she was entitled to damages of $7,636.81 for the interest she paid on the mortgage, to be reduced by ⅜ (Formby’s interest) and the number of months Formby lived in the house and it was taken off the ^market. The court denied Dorsett’s claim for travel expenses, lost wages and long distance telephone call expenses incurred after the breach because these expenses were litigation expenses and not damages directly resulting from the breach. Dorsett was also not allowed to recover for expenses that improved or enhanced the property.
The trial court ultimately concluded that Dorsett was not entitled to any damages because the $8,400 in rent she received offset the interest she paid on the refinanced mortgage. No attorney fees were awarded as no evidence was introduced at trial to establish the amount of attorney fees. The court also denied the appraiser’s $240 fee for testifying because he did not testify as an expert witness.

*900
DISCUSSION

Measure of Damages

Appellant first argues that the trial court erred in determining that the appellants were only entitled to the difference between the market value of the house on the date of the sale and the contract price, based on this court’s decision in Lockhart v. Sutton, 503 So.2d 1046 (La.App. 2d Cir. 1987). Relying on Nesbitt v. Dunn, 28,240 (La.App.2d Cir.4/3/96), 672 So.2d 226, Dor-sett contends that she is entitled to the difference between the contract price and the amount for which the house was eventually sold.
La. C.C. art.1995 provides that damages are measured by the loss sustained by the obligee and the profit of which he has been deprived. The measure of damages is clear when the sale involves a movable. See La. C.C. art. 2611, which provides that if the seller resells movables after the |4buyer fails to perform a contract of sale, then the seller is entitled to recover the difference between the contract price and the resale price.
In Lockhart, the buyer breached a contract to purchase a home for $76,000. Thirteen months later, the house was sold for $61,500. This court stated that the correct measure of damages for the breach of a contract to sell a home, in addition to the expenses incurred as a result of the breach, is the difference between the contract price and the market value of the object of the contract on the date of the breach. Id., 503 So.2d at 1049. Cited in support of this standard were Womack v. Sternberg, 247 La. 566, 172 So.2d 683 (1965) and Danes v. McKnight, 251 So.2d 491 (La.App. 1st Cir.1971), aff'd 262 La. 915, 265 So.2d 220 (1972).
Citing Lockhart, the Third Circuit used this same test to measure damages for the breach of a contract to purchase a supermarket building in Vallot v. Champagne, 583 So.2d 549 (La.App. 3rd Cir.), writ denied, 588 So.2d 108 (La.1991). There was apparently no subsequent sale of the supermarket in Vallot. We recognize that the Third Circuit later used a different test in Natali v. Froeba, 98-1354 (La.App. 3rd Cir.3/3/99), 735 So.2d 30, writ denied, 99-1442 (La.9/17/99), 747 So.2d 1106, finding that the plaintiffs were entitled to the difference between the contract price and the later sale price of a tract of land. The Natali court cited Bordelon v. Kopicki, 524 So.2d 847 (La.App. 3rd Cir.1988) in support of this position, without distinguishing Vallot.
This court concluded in Nesbitt that the trial court did not err in awarding the difference between the contract price and the amount for Rwhich the property was subsequently sold. However, we note that no jurisprudence or law was cited in Nes-bitt to support this departure from the measure of damages utilized in Lockhart. Therefore, we conclude that the trial court properly used the measure of damages set forth in Lockhart.

Damages

Dorsett next urges that the trial court erred in denying all of the allegedly consequential damages she suffered after the date of the contract breach. Specifically, Dorsett claims she is entitled to reimbursement for travel expenses, lost wages, storage costs, gas line repairs, repairs to a faucet and a fan and the cost of long-distance phone calls.
An obligor in good faith is liable only for the damages that were foreseeable at the time the contract was made. La. C.C. art.1996. An obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform. La. C.C. art.1997. Bad faith in the context of art.1997 generally implies actual or constructive fraud or *901 a refusal to fulfill contractual obligations, not an honest mistake as to actual rights or duties. Delaney v. Whitney Nat. Bank, 96-2144 (La.App. 4th Cir.11/12/97), 703 So.2d 709, writ denied, 98-0123 (La.3/20/98), 715 So.2d 1211. See also comment (b) to article 1997 providing that “[a]n obligor is in bad faith if he intentionally and maliciously fails to perform his obligation.” The trial court never made a specific finding that the Johnsons breached the sales contract in bad faith. However, we will assume the Johnsons were in bad faith while discussing this assignment of error.
IfiWe agree with the trial court that the claimed expenses for telephone calls, travel and lost wages were litigation expenses, and therefore, were not. compensable. These expenses were not directly caused by the breach. The additional repairs requested by the Johnsons enhanced the value of the house and would have been reflected in the later purchase price. Moreover, there is no evidence that these repairs were required for the subsequent sale. Compare Bond v. Broadway, 607 So.2d 865 (La.App. 2d Cir.1992), writ denied, 612 So.2d 88 (La.1993), where this court allowed the recovery of repair costs necessary to sell the house to another buyer and which would not have been incurred if there had been no breach. Finally, while Dorsett may have stored furniture in anticipation of the sale because the Johnsons required the house to be empty at the time of closing, there is no reasonable explanation as to why Dorsett did not return the furniture to the home once the sale fell through. The storage rent per month was $40, and she rented the storage unit for seven months, beginning on May 20, 1996, which was prior to the breach. The storage expenses would have been incurred even if the Johnsons had not breached the purchase agreement. The trial court was not clearly wrong in denying the claim for these damages.

Attorney Fees

Dorsett argues in her third assignment of error that the trial court erred in denying an award of attorney fees. Dorsett seeks over $7,000 in attorney fees and expenses. She also seeks attorney fees for this appeal. The Buy/Sell agreement permitted reasonable attorney fees in the event of a breach. However, Dor-sett presented no evidence at trial setting forth the |7amount of attorney fees. Instead, her counsel attached an invoice of attorney fees to a post-trial memorandum. After carefully reading the entire trial transcript, we do not find any indication that the trial judge held the record open to allow additional evidence to be introduced regarding attorney fees. Nevertheless, Dorsett correctly asserts that proof of the value of an attorney’s services is not necessary where the services are evident from the record. See Odom v. Respiratory Care, Inc., 98-0263 (La.App. 1st Cir.2/19/99), 754 So.2d 252; Sibley v. Insured Lloyds, 442 So.2d 627 (La.App. 1st Cir.1983). Accordingly, $2,000 is a reasonable attorney fee for services rendered in this matter at the trial and appellate levels. The judgment is amended to include this award.

Expert Witness Fee

Dorsett contends in her final assignment of error that the trial court erred in denying recovery of an expert witness fee for the testimony of appraiser Jim Gallagher. La. R.S. 13:3666 provides for the compensation of expert witnesses. While Gallagher agreed that he was a professional appraiser who was charging a fee of $100 per hour to testify, he was never tendered for acceptance by the court as an expert witness, much less qualified as an *902 expert. This assignment of error is without merit.

Conclusion

We amend the judgment to award attorney fees of $2,000. As amended, the judgment is affirmed.

DECREE

As amended, the judgment is AFFIRMED at appellees’ cost.