900 So.2d 65 (2005)
Sylvia AGUILAR
v.
TRANSIT MANAGEMENT OF SOUTHEAST LOUISIANA, INC., Regional Transit Authority and State Farm Mutual Automobile Insurance Company.
No. 04-CA-1027.
Court of Appeal of Louisiana, Fifth Circuit.
March 1, 2005.
*67 Robert L. Manard, III, New Orleans, LA, for Plaintiff/Appellee-2nd Appellant.
Ramona N. Wallis, New Orleans, LA, for Defendant/Appellant.
Fred M. Trowbridge, Jr., New Orleans, LA, for Defendant/Appellee.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY, and CLARENCE E. McMANUS.
JAMES L. CANNELLA, Judge.
In this tort case, Defendants, Walter A. Obando (Obando) and Allstate Insurance Company (Allstate), appeal from the trial court ruling rendered against them and in favor of the Plaintiff, Sylvia Aguilar (Aguilar). For the reasons which follow, we affirm.
This case arises out of an incident that occurred on December 17, 2001, when Aguilar was injured while riding a Regional Transit Authority (RTA) bus. In her original petition, filed September 12, 2002, Aguilar alleged that her injuries resulted from an accident caused by the negligence of the bus driver, Stanley Hall (Hall), an employee of Transit Management of Southeast Louisiana, Inc. (TMSEL) and RTA. The petition alternatively alleged that the accident was caused by the negligence of a phantom driver, later identified as Obando, when that driver turned from the middle lane across the path of the bus, causing the bus to brake suddenly to avoid contact. Aguilar filed suit against TMSEL, RTA and her uninsured motorist (UM) insurer, State Farm Mutual Automobile Insurance Company (State Farm).
State Farm filed an answer to the petition on November 2, 2002. Thereafter, RTA was dismissed without prejudice from the suit on the Plaintiff's motion.[1] On April 7, 2003 State Farm was granted leave to file an amended answer in defense to its liability asserting that the accident *68 was caused by the combined negligence of Hall and Obando (naming Obando for the first time). State Farm also asserted Aguilar's comparative negligence as a defense to its liability.
On April 9, 2003, Aguilar filed a First Supplemental and Amending Petition, adding the additional Defendant, Obando. On October 27, 2003, Aguilar filed a Second Supplemental and Amending Petition, naming Obando's liability insurer, Allstate, as an additional Defendant. Answers were timely filed by all Defendants.
Trial on the merits took place on June 16, 2004. At trial, Aguilar testified that she was thrown to the floor of the bus when it came to a sudden and unexpected stop, causing injuries to her head, neck, back, wrist and hand. Hall testified that he was forced to come to a sudden stop while traveling lake-bound on Williams Boulevard in the right lane when a red van in the center lane abruptly made a right turn across his lane. Obando testified that he did not remember being in the area where the bus stopped at the time or on the day of the incident. He produced a work order showing that he had worked across the river on that day, but did not remember what time he quit work that day. However, there was evidence that Obando's helper, whom he brings home each day, does reside in the vicinity of the bus incident. On June 28, 2004, the trial court rendered judgment in favor of Aguilar and against Obando, Allstate and State Farm as follows:
IT IS ORDERED, ADJUDGED AND DECREED, that there be Judgment in favor of plaintiff, Sylvia Aguilar and against defendant, Walter Abando [sic] in the following amounts:

Medical bills $ 3,465.20
General Damages 9,000.00  (consisting of $6,400 [sic]
past pain and suffering and $2,500 in future pain and suffering)
 __________
Total $12,465.20

Also considering the insurance policies of Allstate and State Farm;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that Allstate be cast in judgment in solido with Walter Abando [sic] in the amount of $10,000. State Fare is the uninsured motorist carrier of plaintiff and cast in judgment in solido with Walter Abando [sic] in the amount of the excess of $2,465.20.
It is from this judgment that Obando and Allstate appeal. They also filed an exception of prescription for the first time in this Court. State Farm filed an answer to the appeal. Aguilar filed a motion for a devolutive appeal which was not timely filed. However, since she expressly delineated her issues, as required for an answer to an appeal, and it was timely filed as an answer, we will treat it as such.[2]

OBANDO AND ALLSTATE
Prior to filing their brief in support of their appeal, Obando and Allstate filed an exception of prescription in this Court for the first time. Such action is permitted under La. C.C.P. art. 2163 when the exception, as here, was filed prior to submission *69 of the case for decision. In the exception, Obando and Allstate point out that the accident occurred on December 17, 2001. Suit was filed against TMSEL, RTA and State Farm on September 12, 2002. However, Obando was not added as a defendant by supplemental petition until April 9, 2003.
Obando and Allstate recognize in the exception that the Plaintiff relied on solidary liability between the timely-sued Defendants and Obando to interrupt prescription. However, they mistakenly argue that the solidarity relied on was between TMSEL and Obando, and since TMSEL was found not to be liable, there is no solidarity, and the action against Obando is prescribed. The error in this argument, as pointed out by Aguilar in response, is that the solidarity existed not between TMSEL and Obando, but between State Farm and Obando. Hoefly v. GEICO, 418 So.2d 575 (La.1982). Thus, the prescription exception, as initially postured, has no merit.
Thereafter, in his appellate brief, Obando expanded his prescription argument, that since State Farm and Obando were only liable solidarily for the excess portion of the judgment (over that covered by the primary liability carrier or $10,000), the solidary liability should not suffice to interrupt prescription as to Obando. Obando relies on the case of Rizer v. American Sur. And Fidelity Ins. Co., 95-1200 (La.3/8/96), 669 So.2d 387. We find no merit in this additional prescription argument.
The Rizer case, relied on by Obando in support of his argument that the action filed against him is prescribed, is not on point. In Rizer, the Court held that a timely filed suit against the liability carrier did not interruption prescription as to the UM carrier because the two insurers were not solidarily bound, since the liability of one only came into play after the liability of the other was exhausted. That is not the case here. State Farm, the timely sued UM carrier, and Obando, the tortfeasor, are bound to the Plaintiff for the same debt. Moreover, this issue was long ago decided, followed and is well entrenched in our jurisprudence. Hoefly v. GEICO, 418 So.2d 575 (La.1982).
In Hoefly, the Court held that the UM carrier and the tortfeasor were solidary obligors such that suit against one interrupted prescription as to the other. See also Hayden v. Gittens, 97-0726 (La.App. 4th Cir.12/10/97), 704 So.2d 927 (where, as here, it was the UM carrier who was timely sued and the tortfeasor who was added after the one year prescriptive period). The opinion rendered in Rizer expressly did not overrule Hoefly. Accordingly, we find no merit in the prescription exception argued by Obando and Allstate, and deny their exception.
In brief on appeal, Obando and Allstate assign four errors. In the first two they argue that the trial court erred by improperly admitting into evidence the TMSEL revenue vehicle accident report and the supervisor's accident report under the business or public records exception to the hearsay rule. More particularly, it is argued that the two reports are not reports of regularly conducted activities of the agency, but were investigative reports of an accident and as such do not come within the exception to the hearsay rule created by the business records exception. La. C.E. art. 803(6) & (8). Additionally, it is argued that the supervisor's report should not have been admitted because it was not based on firsthand knowledge as contemplated by the business record exception to the hearsay rule.
State Farm argues to the contrary that the objection made to the admission of the *70 documents at trial rested solely on the argument that the documents should be excluded under La. C.E. art. 803(8)(b)(ii), which excludes investigative reports prepared by or for a public agency when offered by that or any other public agency in a case in which the agency is a party. State Farm argues that this exclusion is not applicable because the document was offered into evidence by State Farm and not TMSEL, the public agency for which the document was prepared. State Farm argues that no other arguments should be considered on appeal because they were not presented to the trial court. Moreover, it is argued that any error that may have occurred in the admission of the report containing the license number and description of the red van that cut in front of the bus is harmless because Jesus Rosado (Rosado), the TMSEL supervisor who prepared the document, testified without objection regarding that information. We agree.
Obando's objection regarding the admission of report centers on excluding the evidence of Obando's license plate number and description of his red van as the vehicle that turned in front of the bus causing the bus to stop suddenly. However, Hall testified without objection concerning the description of the vehicle and driver that turned in front of him and the circumstances of the accident. He also testified that he wrote the partial license plate number down on a piece of paper at the time of the accident and later that day gave it to Rosado. Rosado testified without objection concerning his report, the description of the vehicle that turned in front of the bus, the circumstances of the incident and the partial license plate number of the phantom vehicle. Further, the record indicates, as argued by State Farm, that the basis of the hearsay objection was only La. C.E. art. 803(8)(b)(ii), which is not applicable here where the record in question was being offered by State Farm and not the public agency. Rosado's knowledge of the findings in his report was established by the record and it was Rosado's regular business duty to write a report on any accident involving a TMSEL bus or employee. Accordingly, we find no error in the trial court ruling admitting the supervisor's report and revenue report into evidence and further, if it were error, it is harmless in view of the unobjected to testimony providing the same information as in the reports.
Next, Obando and Allstate argue that the trial court erred in concluding that Obando was the operator of the red van that turned in front of the bus causing the bus to brake suddenly to avoid hitting the van. It is argued that the trial court erred in finding that Aguilar and State Farm met their burden of proof that it was more probable than not that Obando was the operator of the van that caused the bus incident that injured Aguilar.
It is well settled that, on appellate review of a factual determination, the reviewing court may not set aside the factfinder's findings of fact in the absence of manifest error or unless they are clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring, 283 So.2d 716 (La.1973). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart v. State through DOTD, 617 So.2d 880 (La. 1993). In tort cases and other ordinary civil actions, the plaintiff, in general, has the burden of proving every essential element of his case, including the cause-in-fact of damage, by a preponderance of the evidence, not by some artificially created greater standard. Proof by direct or circumstantial *71 evidence is sufficient to constitute a preponderance, when, taking the evidence as a whole, such proof shows that the fact or causation sought to be proved is more probable than not. Lasha v. Olin Corp. 625 So.2d 1002, 1005 (La.1993); Dufrene v. Imperial Fire and Cas. Ins. Co., 03-1001 (La.App. 5th Cir.2/10/04) 866 So.2d 380.
In denying the motion for involuntary dismissal, the trial court stated:
Well, we do have evidence that he does own a red Ford van, and the red Ford van has a license plate number that is close to the partial numbers that the driver turned in to his supervisor. I think it would be pretty rare in the State of Louisiana to have two red vans, Ford vans with a plate that is almost identical, even if you are missing one or two numbers. So, I'm going to deny your motion.
The other thing is that the gentleman who works for him lives in the area. He generally drives the man home after they finish work. They have a job across the river and he admitted that they finished the job and they were taking them home.
Upon review of the record, we find that the trial court factual finding that Obando drove the red Ford van that turned in front of the bus causing the bus to brake suddenly is fully supported by the record and is not manifestly erroneous. Obando owned a red Ford van. He was in the area on the day in question, bringing his assistant home. Hall saw and wrote down the partial license plate number of the phantom vehicle and turned it over to Rosado. Rosado noted the partial plate in his report as 499228. The Department of Public Safety Motor Vehicle Form indicated that Obando's license plate number for a red Ford van was VO499228. Hall described the driver of the red van which matched Obando's appearance. Obando testified that he did not know where he was on the date and time of the incident. He produced evidence that he worked a job across the river that likely took a long time, but neither he nor his assistant could remember what time they quit work that day. Obando testified that he did not remember any such incident with a bus. Based on the evidence presented, we find that the record supports the trial court finding that it was proven by a preponderance of the evidence that Obando was the driver of the red van that turned in front of the bus causing the incident giving rise to Aguilar's injuries and the finding was not manifestly erroneous.
Finally, Obando and Allstate argue that the trial court erred in finding that Aguilar was entitled to damages for future pain and suffering because it was simply not supported by competent evidence. We disagree.
The assessment of "quantum," or the appropriate amount of damages, by a trial judge or jury is a determination of fact, one entitled to great deference on review. As such, the role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. "General damages are those which are inherently speculative in nature and cannot be fixed with mathematical certainty. These include pain and suffering[.]" Frank L. Maraist & Thomas C. Galligan, Jr., LOUISIANA TORT LAW § 7-2. There is no question that the abuse of discretion standard of review applies when an appellate court examines a factfinder's award of general damages. Wainwright v. Fontenot, 00-0492 (La.10/17/00), 774 So.2d 70. In Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), quoted approvingly recently in a Per Curiam by our *72 Supreme Court, Miller v. Clout, 03-0091 (La.10/21/03), 857 So.2d 458, the Court explained:
[T]he discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
Upon review of this case we do not find that the award of $2500 for future pain and suffering is beyond that which a reasonable trier of fact could assess for the effects of injuries that Aguilar sustained. She was 50 years old at the time of the accident and sustained injuries to her head, neck, back, hand and wrist. Dr. Raul Esdaris testified that she suffered both cervical strain and lumbar sacral strain. She also had spasms. Dr. Esdaris testified that such an injury could result in a tearing which would heal back with scar tissue that would cause future pain. He also testified that there was a reasonable possibility that she could suffer life long arthritis as a result of the injuries. The medical testimony, coupled with that of Aguilar that she experienced pain after her medical discharge, supports the trial court award to Aguilar of $2500 in future pain and suffering. We do not find that the trial court abused its considerable discretion in making this award under the circumstances.

STATE FARM
State Farm filed an answer to the appeal arguing, like Obando and Allstate, that the trial court erred in awarding Aguilar future pain and suffering. For the reasons discussed above on this same issue, we find no merit in this argument.

AGUILAR
In Aguilar's answer to the appeal, she presents three arguments. First is an alternative argument, asserted in the event that the judgment against Allstate is reversed. In view of our affirming Allstate's liability, the arguments by Aguilar on this issue are moot.
Second, Aguilar argues that the trial court erred in failing to award expert fees in favor of Dr. Esdaris. This request must first be presented to the district court and cannot be first presented to the appellate court. Moreover, although the issue was delineated in the answer to the appeal, it was neither briefed nor argued, and therefore, is considered abandoned in this Court. Uniform Rules of the Courts of Appeal, Rule 2-12.4; American Gulf V, Inc. v. Hibernia Nat. Bank, 99-376 (La. App. 5th Cir.11/10/99), 749 So.2d 722; Interdiction of Cantu, 97-236 (La.App. 5th Cir.11/25/97), 704 So.2d 320.
Finally, Aguilar argues that State Farm should be cast in judgment for penalties and attorney fees for failing to make an unconditional tender of the amount due her by State Farm, $2,465.20, as per the trial court judgment, following trial and pending appeal. State Farm did not suspensively appeal. Plaintiff alleges that State Farm tendered a check but conditioned negotiation on a full release of all claims. Neither party has cited any cases on either side of this issue as to whether an insurer can be considered arbitrary and capricious for failure to tender payment following a trial court judgment while the matter is on appeal and the insurer has not appealed suspensively. Aguilar argues that there can be no more certain "proof of *73 loss" than a trial court judgment of the damages.
The determination of whether an insurer acted in an arbitrary and capricious manner in failing to tender payment after satisfactory proof of loss under La. R.S. 22:658 and 22:1220 is a factual one. As an appellate court, we are bound by the record in a case. Since Aguilar is raising this claim for the first time on appeal, we have no record from which to review it. Consequently, we find that the issue must first be presented to the district court before it can be considered on appeal.
Accordingly, for the reasons stated above, we affirm the judgment of the trial court in favor of Aguilar and against Obando, Allstate and State Farm, as delineated in the trial court judgment, in the total amount of $12,465.20. Costs of appeal are assessed against Obando, Allstate and State Farm.
AFFIRMED.
NOTES
[1] The record contains two signed motions to dismiss RTA, one dated January 23, 2003 and the other dated March 28, 2002, although the 2002 designation appears to be a typographical error since the motion was stamped as filed on March 27, 2003. The latter motion contains a hand written notion by Plaintiff's counsel providing, "Stipulation that bus driver worked for TMSEL."
[2] Although Aguilar asserts in her appellee brief that she filed an answer to the appeal, there is no record of such a pleading being filed in this Court or the trial court. The record does indicate that Aguilar filed a motion for a devolutive appeal in First Parish Court.